1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY NOEL LABUGA,<br><br>         Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>         Defendant. | Case No.  1:24-cv-00890-SAB<br><br>ORDER AFFIRMING DECISION OF THE<br>COMMISSIONER OF SOCIAL SECURITY<br><br>(ECF Nos. 14, 18) |

Plaintiff Tiffany Noel Labuga ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") failed to develop the record and failed to adequately consider the nature and intensity of Plaintiff's alleged physical symptoms.

For the reasons explained herein, the Court will affirm the decision of the Commissioner.

# I.

## BACKGROUND

### A.    Procedural History

On November 2, 2021, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning May 19, 2021.  (ECF No. 11, Administrative Record ("AR"), 281.)  Plaintiff's application was initially denied on February 9, 2022, and denied upon reconsideration on August 27, 2022.  (AR 146.)  Plaintiff requested before a hearing before an ALJ.  On December 6, 2023, Plaintiff, represented by counsel, appeared for a hearing in front of an ALJ where Plaintiff amended her alleged disability onset date to May 26, 2022.  (AR 76-77.)  Plaintiff and vocation expert ("VE") Paul Steve Ramirez testified.  (AR 17.)  On February 28, 2024, the ALJ issued a decision concluding that Plaintiff was not disabled.  (AR 29.)  On June 5, 2024, the Appeals Council denied Plaintiff's request for review.  (AR 1-5.)

### B.    The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2025, and that Plaintiff had not engaged in substantial gainful activity since May 26, 2022, the alleged onset date.  (AR. 20.)  The ALJ found that Plaintiff had the following severe impairments: cervicalgia; morbid obesity; attention deficit hyperactivity disorder ("ADHD"); major depressive disorder; and generalized anxiety disorders.  (Id.)  However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 21.)

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. 404.1567(c) except Plaintiff is further limited to frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently balance, stoop, crouch, kneel, and crawl; Plaintiff is able to understand, remember, and carry out simples instructions; Plaintiff can make simple work related decisions; Plaintiff cannot perform work at a specific production rate, such as work with hourly quotas or

assembly line work; and Plaintiff can occasionally interact with supervisors, co-workers, and the public. (AR 24.)

The ALJ then found that that Plaintiff was unable to perform any past relevant work, she was 40 on the alleged onset date, and he had at least a high school education. (AR 27-28.) The ALJ discussed that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as framework supported a finding that Plaintiff was "not disabled," whether or not Plaintiff had transferrable job skills. (AR 28.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Id.) Accordingly, the ALJ concluded that Plaintiff had not been under disability, as defined by the Social Security Act, from May 26, 2022, through the date of the decision, February 28, 2024. (AR 29.)

Plaintiff sought timely review of the Commissioner's decision in the federal courts. (ECF No. 1.) The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 7, 9, 10.) Thereafter, the parties filed their briefs on the matter.[1]

## II.

## LEGAL STANDARD

### A. The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

---

[1] On December 1, 2022, the Supplemental Rules for Social Security became effective. Rule 5 states, "[t]he action is presented for decision by the parties' briefs." Fed. R. Civ. P. Appx. Rule 5. The 2022 Advisory Committee noted that "Rule 5 states the procedure for presenting for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules." Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022. Like an appeal, "the briefs present the action for decision on the merits. This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record." Id. The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record." Id. Here, Plaintiff filed a motion for summary judgment, which the Court will construe as a brief in support of his position on whether the Court should affirm, modify, or reverse the decision of the Commissioner. 42 U.S.C. § 405(g).

423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled.  20 C.F.R. § 404.1520;[2]  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[3]  "[I]t is the responsibility of the ALJ, not the

---

[2] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20

1    claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d

2    1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

3            At step five, the burden shifts to the Commissioner, who must then show that there are a

4    significant number of jobs in the national economy that the claimant can perform given her RFC,

5    age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d

6    1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines

7    ("grids") or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpart P, Appendix 2;

8    Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).

9    "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility,

10   resolving conflicts in medical testimony, and for resolving ambiguities.'"  Ford, 950 F.3d at 1149,

11   quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

12        **B.    Standard of Review**

13           Congress has provided that an individual may obtain judicial review of any final decision

14   of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

15   determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only

16   those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517

17   n.13 (9th Cir. 2001).  Further, the Court's review of the Commissioner's decision is a limited one;

18   the Court may not disturb the Commissioner's final decision unless it is based on legal error or

19   the findings of fact are not supported by substantial evidence.  42 U.S.C. § 405(g); Reddick v.

20   Chater, 157 F.3d 715, 720 (9th Cir. 1998).  "[T]he threshold for such evidentiary sufficiency is

21   not high."  Biestek v. Berryhill, 587 U.S. 97, 103 (2019).  Rather, "[s]ubstantial evidence is more

22   than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as

23   adequate to support a conclusion."  Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024),

24   quoting Ford, 950 F.3d at 1154.  In other words, "[s]ubstantial evidence is relevant evidence

25   which, considering the record as a whole, a reasonable person might accept as adequate to support

26

27   _____

     C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they
28   are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir.
     1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1   a conclusion." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002), quoting <u>Flaten v. Sec'y of</u>

2   <u>Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

3       Should the ALJ err, the Court will not reverse where the error was harmless.  <u>Stout</u>, 454

4   F.3d at 1055-56.  "An error is harmless only if it is 'inconsequential to the ultimate nondisability

5   determination.'"  <u>Leach v. Kijakazi</u>, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting <u>Lambert v.</u>

6   <u>Saul</u>, 980 F.3d 1266, 1278 (9th Cir. 2020).  The burden of showing that an error is not harmless

7   "normally falls upon the party attacking the agency's determination."  <u>Molina v. Astrue</u>, 674 F.3d

8   1104, 1111 (9th Cir. 2012), quoting <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409 (2009).

9       Finally, "a reviewing court must consider the entire record as a whole and may not affirm

10   simply by isolating a specific quantum of supporting evidence."  <u>Hill v. Astrue</u>, 698 F.3d 1153,

11   1159 (9th Cir. 2012), quoting <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006).

12   Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the

13   Court may review only the reasons stated by the ALJ in his decision.  <u>Orn v. Astrue</u>, 495 F.3d

14   625, 630 (9th Cir. 2007); <u>see also</u> <u>Connett v. Barnhart</u>, 340 F.3d 871, 874 (9th Cir. 2003).  It is

15   not this Court's function to second guess the ALJ's conclusions and substitute the Court's

16   judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational

17   interpretation, it is the ALJ's conclusion that must be upheld."  <u>Ford</u>, 950 F.3d at 1154, quoting

18   <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

19                    **III.**

20               **DISCUSSION AND ANALYSIS**

21       Plaintiff argues that the ALJ erred in two ways.  First, Plaintiff argues that the ALJ failed to

22   develop the record in relation to obtaining an updated medical opinion.  (ECF No. 14, pp. 4-7.)

23   Second, Plaintiff contends that the ALJ erred by failing to give clear and convincing reasons why

24   the ALJ rejected Plaintiff's subjective complaints.  (<u>Id.</u> at pp. 7-11.)  The Commissioner opposes,

25   arguing that substantial evidence supports the ALJ's decision.  (ECF No. 18.)  The Court agrees

26   with the Commissioner.

27       **A.    The ALJ Did Not Fail to Develop the Record**

28       Plaintiff begins by identifying that there were only three medical opinions in the record.

(ECF No. 14, p. 6.)  Plaintiff then contends that because one treating opinion pre-dated the relevant disability period, and because the other two opinions were from non-examining consultants, the ALJ had a duty to develop the record.  (Id.)  The Commissioner starts by asserting that Plaintiff failed to preserve her claim that the ALJ failed to develop the record because she did not raise it in the administrative hearing.  (ECF No. 18, pp. 3-4.)  In any event, the Commissioner argues that the ALJ's duty was not triggered in this case.  (Id. at pp. 4-12.)  While the Court disagrees with the Commissioner regarding preservation, the Court nonetheless agrees with the Commissioner that the ALJ's duty to develop was not triggered.

"The claimant has the burden of proving that she is disabled."  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).  However, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'"  Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003), quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).  "[I]t is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.  [The ALJ] must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  Id., quoting Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992).  Further, the ALJ's duty to develop the record fully is heightened where the claimant may be mentally ill and thus unable to protect his own interests.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001), citing Higbee, 975 F.2d at 562.

The Ninth Circuit has explained that ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry."  Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288).  "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record."  Id. (citations omitted).  Similarly, the regulations provide the ALJ may order further consultative examination to "resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision."  See 20 C.F.R. § 416.919a.  Examples of situations under which further

1    developing the record may be required include when the additional evidence needed is not

2    contained in the records of the claimant's medical sources, and when highly technical or

3    specialized medical evidence not available from the claimant's medical sources is needed.  20

4    C.F.R. § 416.919a(b).  Once the duty to further develop the record is triggered, failure to do so

5    constitutes reversible error.  See Tonapetyan, 242 F.3d at 1150-51.

6         Beginning with preservation, the Commissioner has offered precedent and discussion,

7    which the Court will address.  In Meanel, the plaintiff took issue with the ALJ's determination that

8    there were substantial number of jobs she could perform in the national economy.  Meanel v.

9    Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).  However, the plaintiff failed to offer statistics that

10   supported her position at both the hearing and to the Appeals Council.  Id. at 1115.  The plaintiff

11   argued that preservation should not be required on judicial review of social security

12   determinations, an issue that up to that point had not been opined on by the Ninth Circuit.  Id.

13   Unpersuaded, the Court held that claimants "must raise all issues and evidence at their

14   administrative hearings in order to preserve them on appeal."  Id.

15        The Commissioner reads Meanel too broadly.  There, the Ninth Circuit was addressing the

16   significant issue of whether preservation was required for judicial review in social security

17   proceedings generally and in the context of statistical evidence never provided to the ALJ nor the

18   Appeals Council.  172 F.3d at 1115.  The issue of whether the ALJ's own special duty to develop

19   the record and how to preserve that issue was not squarely before the Court.  Therefore, the Court

20   finds Meanel to be distinguishable on this point.  See Obrien v. Bisignano, ___ F.4th ___, 2025

21   WL 1803035, at *9 (9th Cir. July 1, 2025) (discussing that reading Meanel too "sweeping[ly]"

22   would contradict with Supreme Court precedent, Carr v. Saul, 593 U.S. 83 (2021)).

23        In Duenas, the plaintiff was missing a record of employment for a period of two years.

24   Duenas v. Shalala, 34 F.3d 719, 721 (9th Cir. 1994).  At the administrative hearing, counsel for the

25   plaintiff requested to hold the record open for 30 days so that counsel could identify and contact

26   the plaintiff's past employers.  Id.  The ALJ agreed and keep the record open, but when the

27   subsequent hearing was held, the only additional evidence submitted was a "statement of

28   employer" that did not directly speak to the missing years of employment.  Id.  The ALJ found that

1   the plaintiff was not entitled to benefits and even if the statement of employer were true, it would

2   not have changed the ALJ's calculation.  Id.  The Appeals Council reversed and remanded for a

3   determination of whether the statement by employer was genuine and whether other years of

4   affected the ALJ's analysis.  Id.  On remand, the ALJ considered the statement of employer and

5   other evidence submitted but ultimately concluded that the plaintiff was not entitled to benefits.

6   Id. at 722.  This time, the Appeals Council affirmed.  Id.  At the Ninth Circuit, the plaintiff argued

7   that the ALJ failed to develop the record for the missing years of employment.  Id.  The Court was

8   not persuaded.  Id.  To begin with, the Ninth Circuit observed that the plaintiff's own information

9   had been "sketchy" in that "[the plaintiff] recalled neither for whom he worked nor what he had

10  earned."  Id.  Instead, the plaintiff had provided the ALJ only a list of states and harvests in which

11  he had worked.  Id.  Knowing that this was an issue, at the first hearing counsel for the plaintiff

12  asked the ALJ to keep the record open to specifically develop the issue but was unsuccessful.  Id.

13  The Ninth Circuit noted that in the subsequent hearing, "[n]o request was made of the ALJ to

14  develop the record, and it is unclear what further the ALJ could have done in the absence of an

15  identification of the alleged employers."  Id.  The Court continued, "[t]here is no reason to think

16  that the ALJ could have succeeded where counsel failed."  Id.  Based on the foregoing, the Court

17  concluded that the ALJ had not violated her duty to develop the record.  Id.

18        The Court observes that Duenas, if anything, undermines the Commissioner's argument.  In

19  Duenas, the Ninth Circuit recited what occurred in the administrative hearing, including noting that

20  the ALJ had not been asked to develop the record.  34 F.3d at 722.  The Ninth Circuit then reached

21  the issue of whether the ALJ had a duty to develop the record and concluded that the ALJ had not

22  violated the duty.  Id.  Thus, Duenas actually squarely undercuts the Commissioner's position

23  because the Ninth Circuit—in a case decided after Meanel—explicitly noted that the claimant had

24  failed to raise the issue of the ALJ's duty to develop the record at the administrative hearing, but

25  the Court reached the merits of that claim.  Were the Commissioner's suggestion the correct view,

26  one would have expected the Court in Duenas to have determined that the plaintiff's claim was

27  unpreserved.  Therefore, Duenas is not persuasive.

28        Finally, the Commissioner's two district court decisions are likewise unpersuasive,

1  especially given the Ninth Circuit's recent decision in Obrien.  See Jones v. Kijakazai, No. 2:22-

2  cv-00909-EFB, 2023 WL 3955679, at *5 (E.D. Cal. June 12, 2023); Josue R. v. Kijakaji, No. 2:21-

3  cv-08654-GJS, 2023 WL 2188693, at *2 (C.D. Cal. Feb. 23, 2023).  In both cases, the plaintiffs

4  argued that the ALJ should have ordered the assistance of a medical expert or consultative

5  examiner.  Simply relying on Meanel, the district courts found that the plaintiffs had not raised

6  these specific objections in the administrative hearing, and based on that fact, the courts concluded

7  that those issues were not preserved.  Jones, 2023 WL 3955679, at *5; Josue R., 2023 WL

8  2188693, at *2.  However, Obrien explicitly counseled the Commissioner and courts from reading

9  Meanel too broadly regarding preservation following Carr.  Indeed, as the Obrien Court observed,

10  the Supreme Court's opinion in "Carr requires a more nuanced assessment of whether an issue-

11  exhaustion requirement applies given the place of the underlying issue in the context of the

12  administrative proceedings."  2025 WL 1803035, at *9.  The Court finds Jones and Josue R. to be

13  analytically insufficient in their treatment of this issue, and therefore, those cases are not

14  persuasive.

15       "SSA ALJ hearings are 'informal, nonadversarial proceedings,' and that ALJs are required

16  to 'look fully into the issues themselves' before rendering a decision on the disability

17  determination."  Id., quoting Carr, 593 U.S. at 91 (simplified).  Relatedly, "the ALJ has a special

18  duty to fully and fairly develop the record and to assure that the claimant's interests are considered.

19  This duty exists even when the claimant is represented by counsel."  Smolen, 80 F.3d at 1288.  In

20  addition, "an ALJ is to be expected, without issue-specific prompting by the parties, to make the

21  predicate findings that are *necessary* under the governing five-step disability evaluation process to

22  support the conclusions that the ALJ makes."  Obrien, 2025 WL 1803035, at *9 (emphasis in

23  original).  Here, no one disputes that the ALJ's duty to develop the record is a special duty and

24  within the exclusive province of the ALJ.  Thus, it makes little sense to require a claimant to

25  preserve an issue in an administrating hearing that essentially requests that the ALJ discharge their

26  duty.  In sum, the Court continues to agree with other courts that have determined that the ALJ's

27  duty to develop the record does not need to be talismanically preserved in the administrative

28  hearing.  Vasquez v. Comm'r of Soc. Sec., No. 1:18-cv-01042-EPG, 2019 WL 3714565, at *2-*3

1  (E.D. Cal. Aug. 7, 2019), citing <u>Smolen</u>, 80 F.3d at 1288; <u>see</u> <u>Obrien</u>, 2025 WL 1803035, at *9-
2  *10.  Therefore, the Court will move onto the merits of this claim.

3      Plaintiff's argument follows this logic chain: there were only three medical opinions in the
4  record.  The ALJ found one record to be outside the relevant time period and therefore discredited
5  it.  The ALJ found the other two opinions, from state agency psychological consultants, only
6  partially persuasive.  These consultants only reviewed records through May 2022.  Based on this,
7  and this alone, Plaintiff argues that the ALJ had a duty to develop the record and "obtain an
8  updated opinion."  (ECF No. 14, p. 6.)  And because the ALJ did not do so, Plaintiff asserts that
9  the ALJ erred.  (<u>Id.</u>)

10     This Court has previously rejected the proposition that an ALJ must obtain a
11  comprehensive consultative opinion in every case before rendering an RFC.  <u>Scott T. C. v.</u>
12  <u>Commissioner of Social Security</u>, No. 1:23-cv-01776-SAB, 2025 WL 227288 (E.D. Cal. Jan. 17,
13  2025).  As in <u>Scott T. C.</u>, Plaintiff's argument here has no basis in the statute or precedent, and the
14  Court notes that even with such an opinion, "there still might be instances where a record is
15  inadequate or ambiguous."  <u>Id.</u> at *5.  Instead, the central inquiry into whether an ALJ's duty to
16  develop the record was triggered is determining whether the record is ambiguous or inadequate to
17  allow for proper evaluation of the evidence.  <u>Tonapetyan</u>, 242 F.3d at 1150.  Critically, and not to
18  be conflated, "[t]he ALJ's duty to develop the record does not shift the burden of producing
19  medical evidence from the [p]laintiff to the agency."  <u>Schwartz v. Comm'r of Soc. Sec. Admin.</u>,
20  No. 2:24-cv-01091-JAT, 2024 WL 4764453, at *3 (D. Ariz. Nov. 13, 2024); <u>see</u> 20 C.F.R.
21  § 404.1512(a)(1).

22     Plaintiff has not articulated how the record was either ambiguous or incomplete, nor is it
23  readily apparent to the Court.  Instead, Plaintiff seemingly seeks to have a state agency
24  consultative opinion with records that followed May 2022.  Yet simply because later records were
25  obtained does not make the record ambiguous or incomplete.  Moreover, at the hearing, Plaintiff
26  requested to keep the record open for further record submission, which the ALJ granted for three
27  weeks.  (AR 73-74, 99.)

28     Accordingly, the Court finds that the ALJ's duty to develop was not triggered.  In the

1    alternative, the Court finds that had the ALJ's duty been triggered, the ALJ satisfied its duty by

2    keeping the record open for three additional weeks.  Tonapetyan, 242 F.3d at 1150.  The ALJ did

3    not err.

4              **B.    The ALJ Properly Considered Plaintiff's Subjective Complaints**

5              Plaintiff argues that the ALJ failed to give clear and convincing reasons for discounting

6    Plaintiff's subjective complaints regarding his symptoms.  (ECF No. 14, p. 15.)  Plaintiff assets

7    that the ALJ did not sufficiently explain how Plaintiff's prior work experience was inconsistent

8    with his alleged symptoms.  (Id. at p. 16.)  Finally, Plaintiff suggests that the ALJ here merely

9    provided a summary of the evidence without adequately giving clear and convincing reasons for

10   rejecting Plaintiff's specific allegations.  (Id.)  The Commissioner responds that the ALJ

11   adequately discounted Plaintiff's subjective systems.  (ECF No. 18.)  The Court agrees with the

12   Commissioner.

13             "The ALJ is responsible for determining credibility, resolving conflicts in medical

14   testimony, and for resolving ambiguities."  Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014),

15   quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995).  As relevant here, where the ALJ

16   "determines that a claimant . . . is not malingering and has provided objective medical evidence of

17   an underlying impairment which might reasonably produce the pain or other symptoms she

18   alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by

19   providing specific, clear, and convincing reasons for doing so."  Lambert, 980 F.3d at 1277,

20   quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015).  "Ultimately, the 'clear

21   and convincing' standard requires an ALJ to show his work."  Smartt v. Kijakazi, 53 F.4th 489,

22   499 (9th Cir. 2022).  An ALJ must show their work by "identify[ing] the testimony [from a

23   claimant] she or he finds not to be credible and . . . explain[ing] what evidence undermines that

24   testimony."  Lambert, 980 F.3d at 1277, quoting Treichler v. Comm. of Soc. Sec. Admin., 775

25   F.3d 1090, 1102 (9th Cir. 2014).  Boilerplate statements and general summaries of the evidence,

26   without more, are not enough.  Id. at 1277-78.  That said, an ALJ is not required "to perform a

27   line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits."

28   Id. at 1277.

While "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise, . . . [w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th at 498 (emphasis in original). Indeed, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). "The standard isn't whether [a] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt, 53 F4th at 499.

In addition, an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007). "[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012), superseded on other grounds by 20 C.F.R. § 404.1502(a). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id., citing Turner v. Commissioner of Social Sec., 613 F.3d 1217, 1225 (9th Cir. 2010).

In the decision, the ALJ identified that Plaintiff had testified that she has neck pain, which she is prescribed medication to take as needed. (AR 25; see AR 82.) When she takes medication, Plaintiff stated that her pain was a five or six out of ten with ten being the most severe. (Id.; see AR 82.) Two to three times a week, Plaintiff has migraines that each last hours to weeks, and Plaintiff has to be in a dark, quiet place. (Id.; see AR 82.) Plaintiff stated that she is unable to lift a gallon of milk in each hand. (Id.; see AR 83.) Plaintiff has four children, ages 2, 5, 8, and 12, and she is unable to carry the 2-year-old. (Id.; see AR 80, 83.) Due to her anxiety, Plaintiff does not take the children to school and does not drive. (Id.; see AR 80, 84.) Plaintiff has panic attacks two to three times a week and takes medications for her mood symptoms. (Id.; see AR 85, 92.) Plaintiff has never been hospitalized for her mental conditions. (Id.) Plaintiff stated that she does

1  not cook or clean and spends six to eight hours in bed throughout the day.  (Id.; see AR 89.)

2      The ALJ then summarized the medical evidence.  The ALJ noted that Plaintiff had

3  underwent gastric sleeve surgery in November 2022, and by November 2023, Plaintiff's BMI was

4  28 to 29.  (AR 25.)  The ALJ observed that Plaintiff has a history of neck pain that radiates to the

5  head and that Plaintiff had been diagnosed with cervicalgia and occipital neuralgia.  (Id.)  During

6  the relevant period, Plaintiff reported that her pain was 75 percent improved when on her

7  medication.  (Id.)  Plaintiff reported improved ability to attend to daily duties and was able to meet

8  her functional goals and care for her kids, run errands, and do more around the house.  (Id.)

9  Physical examinations reflected tenderness to palpation and reduced range of motion but normal

10 tone and strength.  (Id.)  In July 2023, Plaintiff reported that she was stable on her current regimen.

11 (Id.)  Moreover, Plaintiff stated that with medication she can do more with her family, stay active,

12 walk farther and longer.  (Id.)  Plaintiff was taking the least effective dose of medication to help

13 manage her pain and keep herself active and functional.  (Id.)  Plaintiff reported 60 percent

14 improvement of her pain symptoms, and in September 2023, Plaintiff reported that her pain was

15 improved following her recent weight loss.  (Id.)

16      The ALJ then found that while Plaintiff's medically determinable impairments could

17 reasonably be expected to cause the alleged symptoms, Plaintiff's statements regarding the

18 intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the

19 medical evidence or other evidence in the record.  (AR 25-26.)  The ALJ then began with

20 Plaintiff's allegation that she is completely disabled due to her physical and mental impairments,

21 including that she has severe pain and relies on friends and family for chores and care of her

22 children.  (AR 26.)  However, the ALJ pointed out that medical records indicate that Plaintiff's

23 neck pain is significantly improved on medication.  (Id.)  The ALJ also noted that Plaintiff

24 reported that she was able to meet her functional goals and care for her kids, run errands, and do

25 more around the house.  (Id., citing Exhs. B13F/6-7, B16F/6-8, B16F/10-12, B16F/15-17,

26 B16F/19-21, B16F/23-25.)  Moreover, Plaintiff reported improvement of her physical functional

27 abilities following her gastric bypass surgery.  (Id., citing Exh B16F/39.)  The ALJ noted that

28 while Plaintiff had asthma, it had been diagnosed as mild and intermittent.  (Id., citing Exh.

1  B15F/7.)  Finally, the ALJ observed that Plaintiff's alleged level of inactivity was not supported by

2  medical evidence and undercut by Plaintiff's "normal tone and bulk."  (Id.)

3          Regarding Plaintiff's subjective testimony for her mental condition, while the record

4  reflected complaints of fluctuating mood and anxiety, Plaintiff's mental status examinations were

5  generally within normal limits.  (Id., citing Exh. B17F.)  Thus, based on Plaintiff's reporting and

6  diagnoses, the ALJ included mental limitations in the RFC.  (Id.)

7          The Court begins by noting that the ALJ did not only summarize the evidence, as Plaintiff

8  seems to suggest.  Following the summaries of Plaintiff's subjective complaints of pain and the

9  medical evidence, the ALJ then started her discussion with Plaintiff's general allegation of total

10  disability from her physical and mental impairments.  To that allegation, the ALJ did discuss

11  Plaintiff's activities of daily living ("ADLs"), but in context, it is clear the ALJ did so "for

12  discrediting [Plaintiff's] testimony to the extent that [her ADLs] contradict claims of a totally

13  debilitating impairment."  Molina, 674 F.3d at 1113.  This is borne out by the ALJ's later

14  discussion on Plaintiff's pain management and later discussion of medical records when discussing

15  the relevant medical opinions.  For example, the ALJ observed that Plaintiff had physical exams

16  that documented some reduced cervical spine range of motion but normal neurological findings,

17  normal bulk and tone, normal strength, and normal gait.  (AR 27, citing Exhs. B13F, B15F/9,

18  B16F/3-4, B16F/11.)

19          In addition, the Court notes that Plaintiff may be conflating ADLs that Plaintiff testified to

20  at the administrative hearing with reports Plaintiff made herself about her functional ability that are

21  contained in the medical record.  See Carmickle, 533 F.3d at 1161 ("Contradiction with the

22  medical record is a sufficient basis for rejecting the claimant's subjective testimony.").  The ALJ

23  rested much of her conclusion on the fact that while Plaintiff testified to totally disabling

24  symptoms at the hearing, Plaintiff had also reported to other treatment providers, mainly at Pacific

25  Spine & Pain Center, that she had improved ADL functional improvement, including meeting her

26  functional goals, caring for her children, running errands, and doing more around the house.  (AR

27  26, citing Exhs. B13F/6-7, B16F/6-8, B16F/10-12, B16F/15-17, B16F/19-21, B16F/23-25.)

28  Plaintiff also reported improvement in her physical functional abilities following her gastric bypass

1   surgery.  (Id., citing Exh. B16F/39.)

2        Finally, the Court notes that, in context, it is apparent that the ALJ also credited some of

3   Plaintiff's subjective complaints regarding her physical and mental limitations.  For example,

4   when discussing the credibility of P. Solomon, Ph.D., and H. Patterson, Ph.D., the ALJ was

5   unpersuaded by doctors' opinions to the extent they opined that Plaintiff had a mild limitation in

6   her ability to interact with others.  (AR 27.)  Based on Plaintiff's tearfulness and mood symptoms,

7   the ALJ assessed Plaintiff with a moderate limitation in her ability to interact with others.  (Id.)

8        An ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony."

9   Lambert, 980 F.3d at 1277.  Here, the ALJ identified Plaintiff's testimony that she found to be

10  uncredible and what evidence she believed undermined it.  The Court finds that "the ALJ's

11  rationale is clear enough that it has the power to convince."  Smartt, 53 F4th at 499.

12       Accordingly, the ALJ did not err.[4]

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22                                      ///

23  ─────────────────
[4] The Court notes that Plaintiff seemingly interjects a separate RFC argument into her argument regarding the ALJ's
24  evaluation of Plaintiff's subjective complaints.  Essentially, Plaintiff seemingly asserts that the ALJ impermissibly
    relied upon Plaintiff's ADLs in establishing that Plaintiff could work at sustained performance during the workday.
25  (See ECF No. 14, p. 8.)  "In evaluating whether a claimant satisfies the disability criteria, the Commissioner must
    evaluate the claimant's 'ability to work on a sustained basis.'"  Reddick v. Chater, 157 F.3d 715, 724 (9th Cir.
26  1998), quoting 20 C.F.R. § 404.1512(a).  Here, the ALJ relied upon the medical opinions of Drs. Mishek and Jone,
    state agency consultants, who found that Plaintiff did have some "appropriate and necessary limitations based on the
27  [her] physical impairments, including her cervicalgia and morbid obesity."  (AR 27.)  The ALJ then described the
    medical records that supported the ALJ's credibility determination.  (Id., citing Exhs. B13F, B15F/9, B16F/3-4,
28  B16F/11.)  Thus, the ALJ did not exclusively rely on Plaintiff's ADLs when crafting the RFC in terms of sustained
    performance.  Again, the ALJ did not err.

**IV.**

**CONCLUSION AND ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Tiffany Noel Labuga.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:  __July 11, 2025__

STANLEY A. BOONE
United States Magistrate Judge

17